USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3\18\2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RIVERBAY CORPORATION,

                     Petitioner,

            v.

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 32BJ,

                     Respondent.

No. 18-CV-4660 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Petitioner Riverbay Corporation commenced this action, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, seeking to vacate an arbitration award issued against it and in favor of Respondent Service Employees International Union Local 32BJ, a labor organization that represents Riverbay's employees. Before the Court are Riverbay's petition to vacate the award and 32BJ's cross-petition to confirm it. For the reasons that follow, Riverbay's petition to vacate the award is denied, and 32BJ's cross-petition to confirm the award is granted.

## BACKGROUND[1]

    The Court assumes the parties' familiarity with the award and sets forth only those facts necessary to resolve the instant petitions.

    Riverbay is a corporation that manages residential apartment complexes. It entered into three successive collective bargaining agreements with 32BJ in 2007, 2010, and 2014 (collectively, "the CBA").[2] The CBA governs work performed by several of Riverbay's 32BJ-member

---

[1] The facts in this section are drawn from the parties' respective petitions, their supporting papers, and the exhibits attached thereto. They are uncontested unless otherwise noted.

[2] The three agreements ran, respectively, from May 31, 2007 through May 31, 2010; June 9, 2010 through June 8, 2014; and June 9, 2014 through June 8, 2018. *See* Pet. Exs. B–D (Dkt. 1-2, 1-3, 1-4). The 2010 Agreement was

employees, and requires Riverbay to make periodic contributions, on behalf of those employees, to various employee benefit funds (the "Funds"). *See, e.g.*, 2014 CBA at 3, 25–26, 28, Pet. Ex. D (requiring Riverbay to make contributions to 32BJ Funds for on the job training and development programs, a health fund, and a retirement and savings fund). Disputes arising out of the CBA are initially governed by specific grievance procedures. *See id.* at 22–24; 2007 CBA at 21–22. When the grievance procedures are unable to resolve such disputes, the CBA further provides for a referral to a rotating panel of arbitrators. *See* 2014 CBA at 24; 2007 CBA at 23.

On January 23, 2017, 32BJ filed a Notice of Intention to Arbitrate Riverbay's alleged delinquencies in contributing to the Funds. *See* Pet. Ex. G. Riverbay maintained that it had already settled all grievances arising out of the alleged delinquent contributions in an email chain in October 2008, as well as in a written settlement agreement in 2009. Pet. ¶¶ 15–26. As the parties were unable to agree on the issues to be decided in the arbitration, they each submitted their own issues to the Arbitrator; Riverbay ultimately submitted nine and 32BJ submitted four. *See* Pet. ¶¶ 30, 36; 32BJ Revised Notice at 3, Pet. Ex. H (Dkt. 1-8). Arbitration hearings were held by arbitrator Ronald J. Betso (the "Arbitrator"), one of the designated arbitrators in the CBA, on April 6, 2017, June 20, 2017, September 20, 2017, and January 30, 2018. *See* Award at 2, Pet. Ex. A (Dkt. 1-1).

On April 16, 2018, the Arbitrator issued an award in which he found that Riverbay had violated the CBA by failing to make various contributions to the 32BJ funds at issue and required Riverbay to pay over $252,000 encompassing the principal amount owed, interest, liquidated damages, attorney's fees, and auditor's fees. *See* Award at 4–5.

After Riverbay petitioned this Court to vacate the award under the Federal Arbitration

---

executed as a "memorandum of agreement" that extended the terms of the 2007 CBA with certain modifications not pertinent here. *See* Pet. Ex. C. The 2014 Agreement was executed as a new CBA. *See* Pet. Ex. D.

2

Act ("FAA"), 9 U.S.C. § 10, 32BJ filed a cross-petition to confirm the award pursuant to the FAA, 9 U.S.C. § 9.

## LEGAL STANDARDS

"Courts . . . 'play only a limited role when asked to review the decision of an arbitrator.'" *Porzig v. Dresdner*, 497 F.3d 133, 138 (2d Cir. 2007) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). Nonetheless, "[a] decision of an arbitrator . . . is not totally impervious to judicial review." *Id.* at 139. The Federal Arbitration Act ("FAA") provides four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "In addition, a court may vacate an award if it exhibits a 'manifest disregard of the law.'" *Porzig*, 497 F.3d at 139 (quoting *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). "[U]nless [an] award is vacated, modified, or corrected," it "must" be confirmed. 9 U.S.C. § 9. Generally, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d at 110.

## DISCUSSION

### I. Riverbay's Petition to Vacate

Riverbay seeks to vacate the award pursuant to 9 U.S.C. § 10(a)(4) on the grounds that: (1) the award was not final because the Arbitrator purportedly failed to decide all the issues submitted by Riverbay; and (2) the Arbitrator exceeded the scope of his authority in allegedly deciding an issue that the parties did not raise.[3] Because the Court finds that these grounds are unsupported by its review of the award, Riverbay's petition to vacate the award is denied.

#### A. Finality

To be final, an arbitration award "must resolve all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication." *JLNW, Inc. v. Nat'l Retirement Fund*, No. 17-CV-5095 (AJN), 2018 WL 4757953, at *4 (S.D.N.Y. Sept. 28, 2018) (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (2d Cir. 2006). Moreover, "the court should defer to the arbitrator's decision so long as there is a barely colorable justification for it." *Id.*; *see also Southerndown, Inc. v. HSS LLC*, No. 11-CV-8619 (TPG), 2012 WL 265987, at *1 (S.D.N.Y. Jan. 27, 2012).

Riverbay argues that, of the nine issues it submitted to the Arbitrator, the Arbitrator failed

---

[3] Riverbay characterizes its assertion that the Arbitrator "ignor[ed] certain issues submitted to arbitration" as grounds for finding the Arbitrator "exceeded the scope of his authority." Pet. at ¶ 49. In the Court's view, however, a petition to vacate based on the premise that an arbitrator neglected to decide every issue presented is more properly construed as a challenge to the award's finality. *See Schatz v. Cellco P'shp.*, No. 10-CV-5414 (JMF), 2016 WL 1717212, at *3 (S.D.N.Y. Apr. 28, 2016); *see also Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 51 (2d Cir. 2015) (noting that an arbitrator exceeds her authority "only by considering issues beyond those the parties have submitted for [her] consideration," or "by reaching issues clearly prohibited by law or by the terms of the parties' agreement"). In any event, since the Court ultimately finds that the Arbitrator did decide each of the issues submitted, the distinction is ultimately irrelevant to resolving Riverbay's petition.

to resolve issues 3, 4, 5, and 7, which raised the following questions:

3. Does the amount of liquidated damages totaling a 201.6% markup of the principal demanded by the 32BJ Funds violate the terms of ERISA? If so, what shall be the remedy?

4. Do the New York usury laws for contract apply if the liquidated damages provisions of ERISA did not pre-empt state law? If so, what shall be the remedy?

5. Does the amount of liquidated damages totaling a 201.6% markup of the principal demanded by the 32BJ Funds violate the New York Usury laws for contract? If so, what shall be the remedy?

7. Does the effort by the 32BJ Funds to collect contributions in violation of the October 10, 2008 email stream writing constitute a violation of the LMRA [Labor Management Relations Act]? If so, what shall be the remedy?

Pet. at ¶¶ 30, 34, 40, 41.

The Court disagrees and finds that the Arbitrator did in fact decide these issues. As an initial matter, the Arbitrator noted in the award that the issues to be decided by the arbitration were "set forth in [32BJ's] letter dated February 23, 2017, and [Riverbay's] letter dated March 16, 2017." Award at 2. These letters clearly articulate every issue that was the subject of the Arbitration, including the disputed ones. *See* 32BJ Feb. 23, 2017 Ltr., Breen Aff. Ex. A (Dkt. 21-1); Riverbay Mar. 16, 2017 Ltr., Freidman Aff. Ex. A (Dkt. 15-1). In addition, Riverbay itself alleges that "[o]n each of the days of [the] hearing[s] the arbitrator repeatedly asserted that he would consider and decide each of the issues submitted by Riverbay." Pet. ¶ 38. In the award, the Arbitrator also referenced the post-hearing written submissions, in which Riverbay reiterated the nine issues it sought to be decided. *See* Riverbay Mar. 22, 2018 Post-Hr'g Ltr. Br. at 2–3, Pet. Ex. I (Dkt. 1-9). Ultimately, the Arbitrator noted that his decision was based "on all the credible evidence adduced at the hearing and on the case as a whole." Award at 4. The award thus indicates—or at the very least implies—that the grounds for the Arbitrator's decision were based on his assessment of all the issues that the parties submitted. *See KX Reinsurance Co. v. Gen.*

5

*Reinsurance Corp.*, No. 08 CIV. 7807(SAS), 2008 WL 4904882, at *4 (S.D.N.Y. Nov. 14, 2008) (relying on language in award that arbitral panel had "heard and fully considered all the evidence and arguments associated with the matters before them" to support finding that award was final).

Furthermore, with respect to issues 3, 4, and 5—which collectively consider whether the liquidated damages provided for in the CBA violate ERISA and the New York State Usury Laws for contract, to the extent the usury laws apply—the award referenced them twice, and ultimately decided them in favor of 32BJ. First, the Arbitrator noted that Riverbay had argued that "the Union's liquidated damages charges are excessive and in violation of New York State Usury Law and ERISA." Award at 3. The Arbitrator further stated:

> Regarding the Employer's argument that the Union's request for liquidate[d] damages is usurious and in violation of ERISA it is clear that the CBA provides for both. The CBA states in clear and unambiguous language that: "If the Employer fails to make required payments to the Pension and Health Fund when due, in any arbitration or court proceeding, the Employer shall be liable to the Fringe Benefit Fund for [. . .] liquidated damages [. . .] if a judgment in favor of the Pension and Health Fund is awarded [. . . .]" The CBA was negotiated by the parties and agreed upon by the parties and has been in existence for quite several years . . . . It is therefore not proper to seek through arbitration what should be sought through negotiation. So, I must adhere to the clear and specific language of the CBA.

Award at 4 (emphasis omitted).

The Arbitrator then required Riverbay to pay the liquidated damages that he found were owed under the CBA and the award, stating that "in resolving th[e] dispute the Arbitrator's Award shall be final and binding on the parties." Award at 2. Although the Arbitrator did not explicitly articulate his rationale as to whether the liquidated damages provision complied with ERISA and the New York Usury Laws (to the extent they were not pre-empted), it can be inferred from the award that the Arbitrator decided these issues in favor of 32BJ since he recognized Riverbay's position on them but ultimately awarded 32BJ the damages it sought. *See Schatz v. Cellco P'shp.*, No. 10-CV-5414 (JMF), 2016 WL 1717212, at *3 (S.D.N.Y. Apr. 28, 2016) (rejecting petitioners'

6

argument that arbitrator did not decide whether petitioners were entitled to attorney's fees and costs because the arbitrator had concluded that petitioners lost every claim in the arbitration and that the award stated it was "in full settlement of all claims"); *Melun Industries, Inc. v. Strange*, 898 F. Supp. 995, 1002 (S.D.N.Y. 1992) (inferring that, because the arbitrator explicitly ruled in favor of petitioner on certain issues, she had decided the remaining issues in favor of respondent).

For substantially the same reasons, the Court also finds that the Arbitrator decided the seventh issue—whether 32BJ's efforts to collect certain contributions from Riverbay violated the LMRA—in favor of 32BJ. On this issue, Riverbay argued that the October 2008 email stream constituted a "writing" under the LMRA that released it from its obligations with respect to certain fund contributions, and that 32BJ's efforts to collect on these contributions breached this "writing" under the LMRA. *See* Riverbay Mar. 22, 2018 Post-Hr'g Ltr. Br. at 18, 20 n.2. The Arbitrator explicitly touched on this issue by recognizing that Riverbay contended "that an e-mail chain . . . excuses [Riverbay] from making contributions to the Funds for its temporary employees." Award at 3. He stated that he gave the e-mail chain "little credit," however, because he found that the 32BJ employee communicating in the chain "had no authority to bind [32BJ] to any agreement" and that another 32BJ employee that was copied on the chain had no such authority either. *Id.* Given that the Arbitrator expressly rejected the email chain as an enforceable agreement, and that he did not make any liability findings against 32BJ in what he stated was a final award, the Court finds that the award provides a sufficient basis to infer that the Arbitrator decided this issue in favor of 32BJ. *See Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*, 626 Fed. App'x 303, 307 (2d Cir. 2015) (construing decision of arbitral panel not to issue further rulings or awards, in response to petitioner's request for an additional ruling that it was entitled to reimbursement of certain funds, as a rejection of the merits of petitioner's reimbursement

argument); *Goldman v. Architectural Iron Co.*, No. 01-CV-8875 (DLC), 2001 WL 1705117, at *4 (S.D.N.Y. Jan. 15, 2001).

It is true that, in the award, the Arbitrator's reasoning underlying his decisions on the submitted issues in question is sparse. But "[t]he arbitrator's rationale for an award need not be explained and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case[.]" *D.H. Blair & Co.*, 462 F.3d at 110. Where, as here, the Arbitrator stated that he considered the parties' submissions identifying the issues to be decided, referenced these issues in the award—directly or indirectly—and made clear that the award was a final ruling, the Court is satisfied that the Arbitrator decided each of the submitted issues. Riverbay's request to vacate the award based on lack of finality under 9 U.S.C. § 10(a)(4) is thus denied.

## B. Scope of Authority

"An arbitrator exceeds his authority only by (1) 'considering issues beyond those the parties have submitted for [his] consideration,' or (2) 'reaching issues clearly prohibited by law or by the terms of the parties' agreement.'" *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 51 (2d Cir. 2015) (alteration in original) (quoting *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012)). In other words, in considering whether an arbitrator has acted outside the scope of his or her authority such that the award should be vacated under 9 U.S.C. §10(a)(4), the Court "focuses on whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002); *see also T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 (2d Cir. 2010) ("[O]nce we determine that the parties intended for the arbitration

8

panel to decide a given issue, it follows that the arbitration panel did not exceed its authority in deciding that issue—irrespective of whether it decided the issue correctly.").

Riverbay's position that the Arbitrator did not have authority to decide whether the CBA provided for liquidated damages in the amount requested by 32BJ is meritless. 32BJ, in its Revised Notice of Intent to Arbitrate, submitted the issue of "[w]hether [Riverbay] failed to render the proper . . . payments of principal contributions, interest *and liquidated damages* due to the Funds." (emphasis added). And as previously noted, the Arbitrator had authority to decide issues that are presented by the parties. *Westerbeke Corp.*, 304 F.3d at 220; *Jock*, 646 F.3d at 122. The Arbitrator also had the authority to decide the issues under the CBA. Neither party disputes that interpreting the CBA was within the bounds of the Arbitration. Indeed, the CBA expressly provides that disputes "arising between the parties under or out of" the CBA "shall be referred for arbitration by [Riverbay] or [32BJ]," and that the Arbitrator's decision is limited "to the application and interpretation" of the CBA. 2014 CBA at 24; 2007 CBA at 23. The Arbitrator's finding that Riverbay is liable for liquidated damages under the CBA in the amount specified in the award is a plain application of the CBA—far from one in which the Arbitrator "dispenses his own brand of industrial justice [such] that his decision may be unenforceable." *See Wells Fargo Advisors LLC v. Tucker*, No. 18 Civ. 6757 (PAE), 2019 WL 79287, at *3 (S.D.N.Y. Jan. 2, 2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)); *see also Foster Wheeler Environ. Corp. v. Energx TN, LLC*, No. 13 Civ. 1178(RA), 2014 WL 982857, at *5 (S.D.N.Y. Mar. 13, 2014) (concluding arbitrator did not exceed the scope of his authority in deciding an issue characterized as an interpretation of the contract in dispute where the contract provided that "[a]ll disputes arising out of th[e] Agreement" would be arbitrated) (first alteration in original).

For these reasons, the Court finds that the Arbitrator acted within the scope of his authority

9

when he decided the amount of liquidated damages Riverbay owed to 32BJ. Riverbay's petition to vacate the award on this ground is thus also denied.

## II. 32BJ's Cross-Petition to Confirm

"[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11" of the FAA. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 10 U.S.C. § 9). Riverbay has identified no basis to vacate the award other than those discussed above and rejected. 32BJ's petition to confirm the award is thus granted. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78-79 (2d Cir. 2012).

The Court also grants 32BJ's request for "pre-judgment interest on those portions of the award that reflect the unpaid principal owed, i.e., $129,286.53 and $27,898.88 or a total of $157,185.41." 32BJ Cross-Pet. Reply Mem. at 6 (Dkt. 25); 32BJ Cross-Pet. ¶ 69. The decision to "grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." *Ceona PTE Ltd. v. BMT Giant, S.A. de C.V.*, No. 16-CV-4437 (WHP), 2016 WL 6094126, at *2 (S.D.N.Y. Oct. 19, 2016). In this Circuit, district courts have exercised this discretion "when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was final and binding." *Serv. Emps. Int'l Union, Local 32BJ v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases). The CBA provides that the Award "shall be final and binding and enforceable in any appropriate tribunal," (2014 CBA at 24; 2007 CBA at 23) and the Court will thus grant prejudgment interest.[4] Where, as here, the CBA does not specify the amount of prejudgment interest to be awarded, the common practice "among courts within the Second Circuit is to grant

---

[4] Riverbay asserts that prejudgment interest should not be awarded because "the arbitrator already awarded [32BJ] prejudgment interest." Riverbay Mem. Opp. to Cross-Pet. at 4 (Dkt. 23). The Court finds no basis for this assertion.

10

interest at a rate of 9%, the rate of prejudgment interest under New York State Law, N.Y. C.P.L.R. §§ 5001–5004," which this Court will also follow.[5] *Stone Park Assocs.*, 326 F. Supp. 2d at 556.

Finally, the Court declines to award 32BJ attorney's fees and costs in connection with this action as requested in the cross-petition. *See* Cross-Pet. ¶ 70. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Trustees of New York City Dist. Council of Carpenters Pension Fund, et al., v. Dedicated Indus. LLC*, No. 14-CV-7610 (RA), 2015 WL 4503695, at *5 (S.D.N.Y. July 23, 2015). "In [the] exercise of their inherent equitable powers," however, "courts have routinely awarded attorney's fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court," *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870(RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases), or where "opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons," *Int'l Chem. Works Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). As Riverbay sought to vacate the award, and 32BJ does not allege that Riverbay's petition to vacate was brought in bad faith, 32BJ's request for attorney's fees and costs is denied.

---

[5] 32BJ did not explicitly request post-judgment interest in their cross-petition. As post-judgment interest is mandatory pursuant to 28 U.S.C. § 1961(a), however, the Court also awards 32BJ post-judgment interest. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that district court erred in failing to include post-judgment interest in a damages award).

11

## CONCLUSION

For the foregoing reasons, Riverbay's petition to vacate is DENIED and 32BJ's cross-petition to confirm is GRANTED. The Clerk of Court is directed to enter judgment in the amount of $252,927.19, plus (1) pre-judgment interest on the unpaid principal owed ($157,185.41) calculated at a rate of 9% per annum from April 16, 2018 through the date of judgment in this action and (2) post-judgment interest at the statutory rate. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: March 18, 2019
       New York, New York

Ronnie Abrams
United States District Judge